# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

SAMUEL CURTIS MCGILL, JR., an individual,

**Plaintiff**

**v.**

**(1) MATT BALLARD, ESQ.** an individual, in his personal capacity;

**(2) GEORGE GIBBS, JR., ESQ.,** an individual, in his personal capacity;

**(3) MARY LEAVELL, ESQ.,** an individual, in her personal capacity;

**(4) ROGERS COUNTY DISTRICT ATTORNEY'S OFFICE**, a subdivision of the Rogers County and thereby of the State of Oklahoma, through **MATT BALLARD, ESQ.,** in his official capacity as District Attorney;

**(5) THE ROGERS COUNTY SHERIFF'S DEPARTMENT,** a subdivision of Rogers County and thereby of the State of Oklahoma, through **SCOTT WALTON,** in his official capacity as Sheriff;

**(6) JOSEPH CLINTON,** an individual, in his personal capacity;

**(7) CANDY CLINTON,** an individual, in her personal capacity;

**(8) JOHN AND JANE DOES**, unknown individual employees of the District Attorney and Sheriff's Department, in their personal capacities, and their official capacities.

**Defendants.**

▲Court Use Only▲

**Case No. 23-CV-00365-TCK-MTS**

# COMPLAINT

Plaintiff Samuel Curtis McGill, Jr., acting by and through the undersigned counsel, respectfully files this Complaint alleging that the above-named Defendants violated his civil rights as protected by the Constitution and laws of the United States and, independently, violated the laws of the State of Oklahoma.

Any averment made herein that is not supported by a specific citation is made upon information and belief. Any quotation set forth herein is an averment by Plaintiff, upon information and belief, that such quotation is a true and accurate quotation. In the event of a conflict between the quotation as set forth herein and the actual statement, naturally the actual statement controls. Any information or document referenced herein is not incorporated into this Complaint by reference unless attached hereto as an exhibit or Plaintiff requests that this Court take judicial notice of such information. Instead, such references are an averment by Plaintiff, upon information and belief, that such information or document exists and comports with its description herein. Any averment herein related to the law is merely a reference to what Plaintiff believes, in good faith, to be the controlling law. In other words, such an averment is merely a statement of what Plaintiff believes the law is for purposes of clarity and providing proper notice to the Defendants, not an assertion of what the law should be—unless the averment specifically states that Plaintiff is seeking an extension or change in the law. Any reference herein to a list being

inclusive (e.g., "including x, y, and z") is without limitation (i.e. including but not limited to the items in the list) unless specifically stated otherwise.

Plaintiff intends that this Complaint be read as one complete set of averments supporting the claims set forth herein. Thus, every paragraph of every section herein is expressly incorporated into every other section herein unless such incorporation contradicts another paragraph in a specific claim at issue, in which case that particular incorporation shall be limited only to the extent necessary to avoid such a contradiction within that claim.

# I.  THE PARTIES

1.     Plaintiff Samuel Curtis McGill, Jr. ("McGill") is a citizen and resident of the State of Oklahoma and of the United States.

2.     Defendant Matt Ballard ("Ballard") is an individual, is a citizen of the State of Oklahoma, is an Officer of this Honorable Court, resides within this Court's judicial district, and is the District Attorney of Rogers County (the 12th District encompasses Craig, Mayes, and Rogers Counties).

3.     Defendant George Gibbs, Jr. ("Gibbs") is an individual, is a citizen of the State of Oklahoma, is an Officer of this Honorable Court, resides within this Court's judicial district and was, at the times relevant to this Complaint, an Assistant District Attorney serving under Ballard.

4.     Defendant Mary Leavell is an individual, is a citizen of the State of Oklahoma, is an Officer of this Honorable Court, resides within this Court's judicial

district and was, at the times relevant to this Complaint, an Assistant District Attorney serving under Ballard.

5.      Defendant Rogers County District Attorney's Office (the "DA's Office") is the constitutional Office of Ballard and a subdivision of Rogers County and, thereby, of the State of Oklahoma. Ballard in his official capacity as District Attorney and the DA's Office are one and the same for all relevant legal purposes.

6.      Defendant Roger's County Sheriff's Department (the "Department") is the constitutional Office of Scott Walton ("Walton"), the law enforcement arm of Roger's County and a subdivision of Roger's County and, thereby, of the State of Oklahoma. Walton in his official capacity and the Department are one and the same for all relevant legal purposes.

7.      Defendants Joseph and Candy Clinton (the "Clintons") are husband and wife, are citizen of the State of Oklahoma, and reside in this Court's judicial District.

8.      The John and Jane Doe Defendants (collectively the "Does") are unknown individual employees or agents of the DA's Office and the Department, whose identities McGill reasonably expects to be obtained during Discovery.

       a.      The named Defendants may also have committed acts or omissions attributed to the Does herein, and McGill reasonably expects any such acts or omissions attributable to the named Defendants to be identified during Discovery such that such acts and omissions can be attributed to a named Defendant.

b.    For clarity, McGill may refer to the unknown DA's Office employees/agents as the "DA Does" and the unknown Department employees/agents as the "Sheriff Does."

9.    Also for clarity, McGill may refer to Ballard, Gibbs, Leavell, and the Does—all in their personal capacities only—and the Clintons herein collectively as the "Individual Defendants."

# II.  JURISDICTION

## A. SUBJECT MATTER JURISDICTION

10.    The Court has subject matter jurisdiction over all of the Federal causes of action set forth herein (Claims A-1 to A-4, B-1 to B-5, C-1 to C-3, and D) pursuant to 28 U.S.C. § 1331 because said causes of action all arise under the Constitution, laws, or treaties of the United States.

11.    The Court has subject matter jurisdiction over all of the Oklahoma causes of action set forth herein (Claims E-1 to E-13) pursuant to 28 U.S.C. § 1367 because the Oklahoma claims are so related to the Federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

## B. PERSONAL JURISDICTION

12.    The Court has personal jurisdiction over all of the Defendants because they are all citizens and residents of the State of Oklahoma and reside within the territorial jurisdiction of this Court or are otherwise subject to being haled into this Court by McGill.

## C. COMPLIANCE WITH NOTICE REQUIREMENTS OF OKLAHOMA LAW

13.     The Oklahoma Governmental Torts Claims Act does not apply to the Oklahoma claims because the acts of the Individual Defendants constitute willful and wanton conduct that is also, independently, outside the scope of their employment as set forth in further detail in Section V(E) below.

14.     Nevertheless, McGill provided notice of those Oklahoma claims for which notice may be required under Oklahoma law. McGill mailed the required Notice contemporaneously with the filing of this Complaint.

15.     Because McGill takes the position that the notice requirements of the Act do not apply, he files this Complaint without waiting for the 90-day 'cooling off' period under the Act to pass.

# III. VENUE

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Oklahoma and reside within this Court's judicial district and, independently, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred within this Court's judicial district—specifically, within Rogers County

# IV.    GENERAL ALLEGATIONS

## A. THE EASEMENT PROCEEDINGS

17.    McGill's father Samuel Curtis McGill, Sr. ("Sam Sr.") owned real property in Rogers County for many years.

18.    After bankruptcy proceedings and various real estate transactions, the Clintons came to own the access route onto Sam Sr.'s remaining property, which was otherwise without access to a public road.

19.    After years of litigation, the Rogers County District Court (the "Oklahoma Court") awarded Sam Sr. an access easement in Oklahoma Case. No. CV-2013-116 (the "Easement Proceedings") on March 14, 2017.

20.    The Easement Proceedings are a judicial proceeding, the records of which are subject to judicial notice. McGill requests that the Court take judicial notice of the records in the Easement Proceedings accordingly.

21.    The easement granted by the Oklahoma Court in the Easement Proceedings is the only road access to the property.

22.    The Journal Entry of Judgment in the Easement Proceedings dated March 14, 2017 provides that the easement shall be 30 feet in width, that the gate at the entry to the new road shall remain open at all times, and that "any cross-member located across the top of the posts of the gate may be removed temporarily when necessary to accommodate entry by vehicles or other loads which are of such a size as

to not be able to pass under the cross-member." We refer to the Oklahoma Court's Judgment as the "Easement Order" hereafter.

23.     Sam Sr. transferred the property, including the access easement, to his son McGill.

24.     McGill desired to move a manufactured home and other vehicles onto his property via the easement as authorized by the Easement Order.

25.     As explicitly recognized in the Easement Order, the Clintons had placed a cross-member across the gate at the entrance to the easement which prevented McGill from making full legal use of the easement insofar as the cross-member made it impossible to move in the manufactured home and other vehicles that were taller than the cross-member.

26.     The Easement Order addressed this issue by authorizing McGill to temporarily remove the cross-member to allow access by vehicles and other property that could not fit under the bar.

27.     However, the Clintons also installed fencing that impeded onto the 30-foot easement in violation of the Easement Order.

28.     McGill made multiple attempts to coordinate removal of the cross-member and fencing with the Clintons. Specifically, McGill, through his counsel at the time, made a request in person to the Clinton's counsel Kim Ritchie, Esq. on January 5, 2021, then a follow up request by email on January 26, 2021.

29.     The Clintons refused to remove the cross-member or fencing.

30.     McGill made multiple calls to the Department to seek assistance in enforcing the Easement Order, but the Department told him it was a civil matter and refused to enforce the Oklahoma Court's Easement Order.

31.     The Easement Order explicitly authorized McGill to remove the cross-member for the purpose of allowing vehicles and property to pass, and the Common Law permitted McGill to remove the fencing that intrude onto the 30-foot right of way.

32.     Nevertheless, after the Department refused to supervise the peaceful removal of the cross-member and fencing, McGill sought relief in the Oklahoma Court by filing an "Application for Order to Remove Cross-Member at Entry Gate" in the Easement Proceedings on March 29, 2021.

33.     Almost two months later on May 12, 2021, the Oklahoma Court (the Hon. Shiela Condren) heard the matter and decided to have the matter heard by the previous judge, the Hon. Dwayne Steidley, since retired but temporarily available to hear the matter. No hearing date was set.

34.     Following the hearing. McGill's counsel advised him by telephone that it would likely take months or years to get the Oklahoma Court to act, and that he had the explicit right pursuant to Oklahoma law and the Easement Order to temporarily remove the cross-member and fencing to permit access by vehicles that

were too tall to fit under it and too wide to fit through the fencing (but still within the 30-foot easement). Counsel therefore advised McGill to remove the cross-member and fencing and explicitly stated—correctly—that Oklahoma law and the Easement Order authorized him to do so.

## B. MCGILL REMOVES THE CROSS-MEMBER AND THE CLINTON'S CALL THE SHERIFF

35.     Pursuant to the advice of counsel, on May 13, 2021, the day following the hearing, McGill temporarily removed the cross-member and the portion of fencing that encroached into the 30-foot easement.

36.     McGill completed removal at 12:30 PM Central Time.

37.     A relative of the Clintons (the Clintons live directly next to the gate), saw McGill removing the cross-member and called the Clintons, who in turn called the Department, which dispatched a Deputy.

38.     The Deputy arrived at 1:41 PM Central Time.

39.     McGill explained to the Deputy that he had the legal right, as successor in interest of Sam Sr. to the easement, to remove the cross-member and fencing to permit the manufactured home to pass, and that his counsel had advised him to do so.

40.     McGill provided the Deputy with a copy of the Easement Order setting forth the location and dimensions of the easement, and authorizing McGill to remove the cross-member.

41.     The Deputy departed.

42.     It took McGill approximately a week to move the manufactured home onto the property.

43.     The Clintons did not request that McGill replace the cross-member but instead demanded that McGill not touch 'their' property, and as of this date it is still sitting on the Clinton's property.

## C.  THE DA'S OFFICE CHARGES MCGILL WITH A FELONY

44.     Two months later, on August 31, 2021, the DA's Office charged McGill with malicious injury to property (21 Okla. Stat. § 1760(A)(2)), a felony, in Oklahoma Case No. CF-2021-430 (the "Criminal Proceedings").

45.     Ballard as DA is ultimately responsible for all charging decisions by the DA's Office.

46.     Ballard approved and ratified the decision to charge McGill and materially participated in the prosecution of McGill.

47.     Gibbs and Leavell materially participated in the decision to charge McGill and participated in the prosecution of McGill and acted, at all times, under the authority of Ballard as District Attorney.

48.     Deputies from the Department (whose identities are not yet known and are, therefore, among the Sheriff Does) arrested McGill on September 5, 2021, on his property, just outside of his home and in full view of his family.

49.     The arrest was unconstitutional pursuant to the Fourth Amendment because it was without probable cause.

50.     The Sheriff Does subjected McGill to an unlawful search incident to arrest. The search was unlawful because the underlying arrest was without probable cause. Therefore, the search was unconstitutional pursuant to the Fourth Amendment.

51.     The Sheriff Does subjected McGill to a humiliating 'strip' search in the Rogers County Jail, which is operated by the Department and overseen by Walton. This search required McGill to remove all of his clothes and expose his bodily orifices to one or more of the Sheriff Does.

52.     The search was unlawful because the underlying arrest was without probable cause. Therefore, the search was unconstitutional pursuant to the Fourth Amendment.

53.     The DA's Office arraigned McGill before the Oklahoma Court on September 7, 2021.

## D. GIBBS AND BALLARD REFUSE TO WITHDRAW THE CRIMINAL CHARGE

54.     McGill hired criminal defense counsel at personal expense. Counsel correctly argued that McGill could not have committed a crime by removing the cross-member as explicitly authorized by the Easement Order (or the fencing impeding the easement) and, therefore, there was no probable cause to arrest or prosecute McGill.

55.     Ballard, Gibbs, Leavell, and the DA Does refused to withdraw the charges despite actual and constructive knowledge of the Easement Order, which establishes that there was no probable cause to support the charge because McGill was exercising a right granted explicitly by the Oklahoma Court in the Easement Proceedings and, independently, that was available at Common Law to remove impediments to an access easement.

### E. GIBBS IS CAUGHT JURY TAMPERING

56.     During July 2022—in the midst of the DA Office's unconstitutional criminal prosecution of McGill—a Rogers County jury convicted Robert Kraft of first-degree murder, with the jury recommending a life sentence.

57.     The DA's Office tried the case.

58.     After the jury entered its verdict, the judge presiding over the case discovered that Gibbs and another Assistant District Attorney from the DA's Office Isaac Shields had used courthouse surveillance cameras to spy on jury deliberations (which were occurring in a courtroom equipped with security cameras due to capacity restrictions arising during the SARS-CoV-2/COVID-19 Pandemic, rather than the regular jury room which had no such cameras) and reported the matter to the DA's Office, who suspended them.

59.     A subsequent investigation by the Oklahoma Attorney General's Office and Oklahoma State Bureau of Investigation confirmed that Gibbs and Shields had accessed security cameras to watch jury deliberations.

60.     Shields and Gibbs subsequently resigned from the DA's Office.

61.     The Oklahoma Attorney General's Office appointed a special prosecutor to determine whether charges should be filed against Shields and Gibbs for jury tampering (listening to or observing a jury while they are deliberating, or even attempting to do so, is a felony under Oklahoma law). That investigation is ongoing.

62.     The misconduct and results of the investigation was reported in the national news. *See, e.g.,* https://www.foxnews.com/us/oklahoma-man-convicted-murder-fatal-stabbing-trial-after-misconduct-prosecutor

63.     Kraft has since moved for a new trial based on jury tampering. His counsel stated to the media that he suspects others in the DA's Office were involved. *See* https://www.fox23.com/news/local/defense-attorney-files-for-mistrial-after-rogers-co-jury-was-spied-on-last-july/article_f92d1154-d7d4-11ed-a1c8-6b47f3d8301b.html.

64.     Neither the Special Prosecutor nor the Oklahoma Attorney General's Office have yet, at least publicly, to rule out that other DA's Office employees or agents—who would be among the DA Does—participated in jury tampering or other misconduct.

65.     Kraft's trial and the subsequent motions practice surrounding the misconduct are set forth in Oklahoma Case No. CF-2018-465 (hereafter the "Kraft Proceedings").

66.     The records of the Rogers County District Court in the Kraft Proceedings are subject to judicial notice by this Court, and McGill respectfully requests that the Court take notice of those records accordingly.

67.     McGill reasonably expects to obtain records in discovery, including the results of the investigation set forth in the Kraft Proceedings presently sealed by the Oklahoma Court, demonstrating that the DA's Office—including its agents Ballard, Gibbs, Leavell, and the DA Does—has a pattern or practice of engaging in unconstitutional conduct towards criminal defendants beyond that already known and set forth herein.

## F. THE DA'S OFFICE CONTINUES TO REFUSE TO DISMISS THE CRIMINAL CHARGE AGAINST MCGILL

68.     After over a year of litigation, and repeated refusals by Ballard and his subordinates (including Gibbs and Leavell) to dismiss the criminal charge, McGill filed a new Motion to Dismiss the case for want of probable cause on September 14, 2022.

69.     Following the disgrace and resignation of Gibbs, Leavell served as the lead prosecuting attorney for the DA's Office in the Criminal Proceedings.

70.     Leavell, with the knowledge and consent, if not on the explicit direction of Ballard (McGill reasonably expects to determine which applies in Discovery), refused to dismiss the criminal charge despite the facial lack of probable cause. Instead, the DA's Office contested the Motion to Dismiss.

71.    The Oklahoma Court (the Hon. Lara Russell) held a hearing on September 21, 2022, and granted the Motion to Dismiss from the bench.

72.    The undersigned counsel entered the Criminal Proceedings on October 17, 2022, and filed a Request with the Oklahoma Court on that date to explicitly find that there was no probable cause to arrest or prosecute McGill.

73.    The Oklahoma Court (Judge Russell) held a hearing on December 16, 2022, and issued an Order finding that the "Case is dismissed due to lack of probable cause based on arguments presented on 09/21/2022 and [judicial] notice of [the Easement Proceedings] civil case."

74.    However, the DA's Office refused to agree not to re-charge McGill—intentionally deciding to instead hold the threat of re-arrest—however illegally—over his head. The dismissal was, accordingly, without prejudice.

75.    McGill respectfully requests that this Court take judicial notice of Judge Russell's Orders of September 17 and December 16, 2022 as part of taking judicial notice of the records in the Criminal Proceedings as a whole.

## G.  Leavell Admits the DA's Office Prosecuted McGill, Despite the Lack of Probable Cause, Solely Because the Clintons Wanted McGill Prosecuted

76.    Following the December 16, 2022, Hearing, but still within the courtroom, Leavell questioned the undersigned about whether McGill would bring a civil rights charge against the DA's Office. Leavell appeared to the undersigned to be very concerned about her personal exposure in such a suit.

77.    The undersigned questioned Leavell as to why the DA's Office would continue to prosecute the case against McGill when there was not, and had never been, probable cause to support the charge—as demonstrated by Judge Russell's dismissal of the charge in the hearing that had just concluded.

78.    Leavell stated to the undersigned that the DA's Office was aware that they would ultimately lose the case due to lack of probable cause because McGill was acting lawfully, and that the only reason that the DA's Office brought and continued to prosecute the charge is because the Clintons wanted them to do so.

79.    Leavell accordingly admitted that the DA's Office had subordinated its prosecutorial authority and discretion to the Clintons—effectively making them agents of the DA's Office acting under color of state law.

80.    Leavell did not specify *why* the DA's Office would subordinate itself to the Clintons. However, McGill reasonably expects to be able to prove after full Discovery that the DA's Office did so due to long-standing political connections between the Clintons' family and certain families of current and historical political power within Rogers County.

## H. THE DA'S OFFICE USES THE THREAT OF A RE-CHARGE TO CHILL MCGILL'S WILLINGNESS TO BRING CIVIL RIGHTS CLAIMS AGAINST THE DEFENDANTS

81.    Despite Leavell's admission and the Oklahoma Court's finding that there was not—and had never been—any probable cause to support the charging,

arrest, and prosecution of McGill, the DA's Office refused to dismiss the charge with prejudice.

82.     Instead, the DA's Office chose to hold the threat of a re-charge—despite the lack of any probable cause to support such a charge—over McGill's head.

83.     Leavell's questioning of the undersigned as to whether McGill would bring civil rights charges against the DA's Office and its employees and agents— including her in particular—establishes that the reason for the DA's Office refusing to dismiss the charge with prejudice was to chill McGill from bringing civil rights charges against the DA's Office due to the threat of a re-charge in retaliation for his doing so.

84.     Further, when McGill sought to expunge his criminal record, the DA's Office obstructed and delayed the expungement process so that it took months to remove the charge from McGill's record. In particular, Leavell did not return the undersigned counsel's calls and emails for weeks at a time as McGill sought expungement.

85.     McGill understandably did not want to bring civil rights claims against the DA's Office until the expungement was granted, and even thereafter hesitated due to fear of retaliation from the DA's Office and the Department.

86.     The Oklahoma Court ultimately granted the expungement—finally clearing McGill of any wrongdoing.

# I. THE UNCONSTITUTIONAL ACTS OF THE DEFENDANTS DAMAGED MCGILL

87.     The Department, based on the decision by the DA's Office to charge McGill despite the lack of probable cause, subjected McGill to arrest on his own property, a search incident to that arrest, and a humiliating 'strip' search in the Rogers County jail without probable cause.

88.     McGill suffered material physical injury and emotional distress from the searches and his arrest, detention, and prosecution.

89.     McGill's reputation and that of his business was damaged by the arrest and prosecution.

90.     McGill spent considerable time and treasure defending himself against the criminal charge for which there was no probable cause to bring in the first place.

91.     The Individual Defendants—not for the first time for at least one of them (Gibbs)—engaged in egregious conduct that should shock the conscience of the Court, and which should be subject to punitive damages to the maximum extent permitted by law to deter such conduct in future.

# V.  CLAIMS FOR RELIEF

## A. FEDERAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR PERSONAL CAPACITIES

### 1.  Claim A-1: Unconstitutional Seizure

- Basis of Claim: 42 U.S.C. § 1983; Fourth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment to the United States Constitution.

- Defendants: Individual Defendants

92.    The elements of a claim under 42 U.S.C § 1983 are: a) that the claim involves the conduct of a person; b) that person acted under color of law; c) the act or omission deprives a right protected by the United States Constitution or Federal law; and d) the act or omission caused harm to the plaintiff.

93.    The Individual Defendants are all persons.

94.    Persons act under the color of state law when they are acting in their official capacity as a public employee or exercising the authority that state law gives them. The Individual Defendants all acted under color of state law as follows:

a.    Ballard acted under color of state law as the District Attorney to obtain a warrant to arrest McGill under false pretenses; that is, without disclosing to the Oklahoma Court that the same Court had granted McGill had an easement and had the right to remove the very property he was accused of damaging under Oklahoma law and, in particular, under the Easement Order.

b.    Gibbs, Leavell, and the DA Does acted under color of state law as agents of the DA's Office, drawing their authority from Oklahoma law through

Ballard's constitutional Office, to obtain a warrant to arrest McGill under false pretenses; that is, without disclosing to the Oklahoma Court that the same Court had granted McGill had an easement and had the right to remove the very property he was accused of damaging under Oklahoma law and, in particular, under the Easement Order.

c.    The Sheriff Does acted under color of state law as agents of the Department to arrest McGill despite actual knowledge (in the form of the copy of the Easement Order McGill gave to the Deputy on May 13, 2021) and constructive knowledge (in the form of the public court records of the Easement Proceedings and Easement Order) that McGill committed no crime by removing the obstructions to his easement.

d.    The Clintons acted under color of state law because the DA's Office delegated its prosecutorial authority and discretion to the Clintons insofar as the DA's Office admitted that it only prosecuted McGill because the Clintons wanted him prosecuted. This renders the Clintons *de facto* agents of the DA's Office.

95.    The acts and omissions of the Individual Defendants (individually and collectively) deprived McGill of a right protected by the United States Constitution. Specifically, the acts and omissions of these Defendants violated McGill's right under the Fourth Amendment (as applied to the States by the Fourteenth Amendment) to be free from seizure (read: arrest) absent probable cause as follows:

a.     Ballard as District Attorney is ultimately responsible for the decision to charge, arrest, and prosecute McGill without probable cause.

b.     Gibbs, Leavell, the Clintons, and the DA Does are responsible for the decision to charge, arrest, and prosecute McGill without probable cause.

c.     The Sheriff Does are responsible for actually arresting McGill without probable cause.

96.     McGill suffered harm from these acts and omissions (individually and collectively) as set forth in Section IV(I) above.

97.     Additionally, to overcome qualified immunity and impose personal liability against a government employee, a plaintiff must show that the defendant violated a clearly established right. A right is clearly established if, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he was doing violates that right.

a.     The Clintons were not government employees and are not, therefore, protected by qualified immunity in the first place.

b.     Nevertheless, the right of a person to be free from seizure absent probable cause is well established in this Circuit.

c.     Therefore, the Individual Defendants each independently violated a clearly established right.

### 2.    Claim A-2: Unconstitutional Search

- Basis of Claim: 42 U.S.C. § 1983; Fourth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment to the United States Constitution.

- Defendants: Individual Defendants

98.    The elements of a claim under 42 U.S.C § 1983 are: a) that the claim involves the conduct of a person; b) that person acted under color of law; c) the act or omission deprives a right protected by the United States Constitution or Federal law; and d) the act or omission caused harm to the plaintiff.

99.    The Individual Defendants are all persons.

100.    Persons act under the color of state law when they are acting in their official capacity as a public employee or exercising the authority that state law gives them. The Individual Defendants all acted under color of state law as follows:

a.    Ballard acted under color of state law as the District Attorney to obtain a warrant to arrest McGill under false pretenses; that is, without disclosing to the Oklahoma Court that the same Court had granted McGill had an easement and had the right to remove the very property he was accused of damaging under Oklahoma law and, in particular, under the Easement Order. The warrant led to the arrest of McGill and, therefore, was a proximate cause of the search incident to that arrest and the 'strip' search at the Roger's County Jail without probable cause.

b.    Gibbs, Leavell, and the DA Does acted under color of state law as agents of the DA's Office, drawing their authority from Oklahoma law through

Ballard's constitutional Office, to obtain a warrant to arrest McGill under false pretenses; that is, without disclosing to the Oklahoma Court that the same Court had granted McGill had an easement and had the right to remove the very property he was accused of damaging under Oklahoma law and, in particular, under the Easement Order. The warrant led to the arrest of McGill and, therefore, was a proximate cause of the two searches.

c.    The Sheriff Does acted under color of state law as agents of the Department to arrest and then search McGill (both at the point of arrest and then again, more intrusively—including a 'strip' search—in the Jail) despite actual knowledge (in the form of the copy of the Easement Order McGill gave to the Deputy on May 13, 2021) and constructive knowledge (in the form of the public court records of the Easement Proceedings and Easement Order) that McGill committed no crime by removing obstructions to his easement.

d.    The Clintons acted under color of state law because the DA's Office delegated its prosecutorial authority and discretion to the Clintons insofar as the DA's Office admitted that it only prosecuted McGill because the Clintons wanted him prosecuted. This renders the Clintons *de facto* agents of the DA's Office.

101.    The acts and omissions of these Defendants (individually and collectively) deprived McGill of a right protected by the United States Constitution. Specifically, the acts and omissions of these Defendants violated McGill's right under

the Fourth Amendment (as applied to the States by the Fourteenth Amendment) to be free from a search absent probable cause as follows:

      a.    Ballard as District Attorney is ultimately responsible for the decision to charge, arrest, and prosecute McGill without probable cause. The warrant obtained led to the arrest of McGill and, therefore, was a proximate cause of the search at the time of arrest and the 'strip' search at the Roger's County Jail without probable cause.

      b.    Gibbs, Leavell, the Clintons, and the DA Does are responsible for the decision to charge, arrest, and prosecute McGill without probable cause. The warrant obtained led to the arrest of McGill and, therefore, was a proximate cause of the search at the time of arrest and the 'strip' search at the Roger's County Jail without probable cause.

      c.    The Sheriff Does are responsible for actually searching McGill, both incident to arrest and at the Jail, both without probable cause.

102.    McGill suffered harm from these acts and omissions by the Individual Defendants (individually and collectively) as set forth in Section IV(I) above.

103.    Additionally, to overcome qualified immunity and impose personal liability against a government employee, a plaintiff must show that the defendant violated a clearly established right. A right is clearly established if, at the time of the

challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he was doing violates that right.

a.      The Clintons were not government employees and are not, therefore, protected by qualified immunity in the first place.

b.      Nevertheless, the right of a person to be free from a search of one's person and effects absent probable cause is well established in this Circuit.

c.      Therefore, the Individual Defendants each independently violated a clearly established right.

### 3.      Claim A-3: Violation of Due Process—Malicious Prosecution (Fourteenth Amendment)

- Basis of Claim: 42 U.S.C. § 1983; Due Process Clause of the Fourteenth Amendment to the United States Constitution.

- Defendants: Ballard (Personal), Gibbs (Personal), Leavell (Personal), the DA Does (Personal), and the Clintons.

104.    The elements of a claim under 42 U.S.C § 1983 are: a) that the claim involves the conduct of a person; b) that person acted under color of law; c) the act or omission deprives a right protected by the United States Constitution or Federal law; and d) the act or omission caused harm to the plaintiff.

105.    Ballard, Gibbs, Leavell, the DA Does, and the Clintons are all persons.

106.    Persons act under the color of state law when they are acting in their official capacity as a public employee or exercising the authority that state law gives them. The Individual Defendants all acted under color of state law as follows:

a. Ballard acted under color of state law as the District Attorney to charge, arrest, and prosecute McGill without probable cause that he had committed *any* crime, much less the crime with which he was charged.

b. Gibbs, Leavell, and the DA Does acted under color of state law as agents of the DA's Office, drawing their authority from Oklahoma law through Ballard's constitutional Office, to charge, arrest, and prosecute McGill without probable cause that he had committed *any* crime, much less the crime with which he was charged.

c. The Clintons acted under color of state law because the DA's Office delegated its prosecutorial authority and discretion to the Clintons insofar as the DA's Office admitted that it only prosecuted McGill because the Clintons wanted him prosecuted. This renders the Clintons *de facto* agents of the DA's Office. The Clintons accordingly caused McGill to be prosecuted without probable cause that he had committed *any* crime, much less the crime with which he was charged.

107. The acts and omissions of these Defendants (individually and collectively) deprived McGill of a right protected by the United States Constitution. Specifically, the acts and omissions of these Defendants violated McGill's right not to be prosecuted for a crime absent probable cause established by the Due Process Clause of the Fourteenth Amendment.

a. At its core, malicious prosecution has always been about vindicating a deprivation of a liberty interest caused by a wrongful criminal

prosecution without probable cause. Indeed, an official accusation of serious crime has a direct impact on a range of liberty interests, as it may disrupt an accused's employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and his friends. As a result, a malicious prosecution deprives the accused of a fundamental liberty interest protected by the Due Process Clause and is actionable under Section 1983.

      b.     The sub-elements required for a malicious prosecution claim to qualify under a Fourteenth Amendment Due Process theory for Section 1983 purposes are: 1) a criminal proceeding was initiated or continued by the defendant(s); 2) lack of probable cause; 3) the defendant acted with malice; and, 4) that the original proceeding terminated in the plaintiff's favor.

      i.     The lack of probable cause and termination of the proceedings in McGill's favor sub-elements are established by the records of the Criminal Proceedings, of which McGill requested this Court take judicial notice above.

      ii.     The initiation or continuation of the proceedings by the Defendants sub-element is established as follows:

      A. Ballard as District Attorney is ultimately responsible for the decision to prosecute McGill without probable cause as a matter of law because he is the District Attorney and the prosecutorial power flows from his constitutional Office.

B. Gibbs, Leavell, the Clintons, and the DA Does are responsible for the decision to continue to initiate and continue to prosecute McGill without probable cause because they actually prosecuted (or in the case of the Clintons, cause the DA's Office to prosecute) McGill.

iii.     The malice sub-element is established as follows:

A. Malice is the intentional doing of a wrongful act, and ranges, depending on the circumstances, from open hostility to indifference by the accused person.

B. The malice of the Defendants is established because each had both actual and constructive knowledge of the lack of probable cause in the form of the public records of the Easement Proceedings and Easement Order, but chose to initiate and continue the prosecution despite knowing that that there was no probable cause.

C. It is critical to note that the DA's Office and Department took several months before they charged, arrested, and prosecuted McGill without probable cause. This is not a situation where a law enforcement officer was forced to make a decision under time pressure and might, therefore, be forgiven for missing a nuanced issue of law. Rather, the DA's Office and Department had actual and constructive notice (in the form of the Easement Order and the public records of the Easement Proceedings) that McGill could not have committed a crime by removing obstructions to his easement explicitly authorized by the Easement

Order, and several months to recognize the lack of probable cause—yet they chose to charge, arrest, and prosecute McGill anyway.

D. The decisions to charge, arrest, and prosecute McGill must, therefore, be regarded as intentionally unconstitutional conduct insofar as it represents *at best* indifference to McGill's rights, if not open hostility to those rights.

108.   McGill suffered harm from these acts and omissions (individually and collectively) as set forth in Section IV(I) above.

109.   Additionally, to overcome qualified immunity and impose personal liability against a government employee, a plaintiff must show that the defendant violated a clearly established right. A right is clearly established if, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he was doing violates that right.

a.   The Clintons were not government employees and are not, therefore, protected by qualified immunity in the first place.

b.   Nevertheless, the right of a person to be free from prosecution absent probable cause is well established in this Circuit.

c.   Therefore, Ballard, Gibbs, Leavell, the DA Does and the Clintons each independently violated a clearly established right.

### 4. Claim A-4: Violation of Due Process—Malicious Prosecution (Fourth and Fifth Amendments)

- Basis of Claim: 42 U.S.C. § 1983, the Fourth Amendment and the Due Process Clause of the Fifth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment to the United States Constitution.

- Defendants: Ballard (Personal), Gibbs (Personal), Leavell (Personal), DA Does (Personal), and the Clintons (Personal).

110. The elements of a claim under 42 U.S.C § 1983 are: a) that the claim involves the conduct of a person; b) that person acted under color of law; c) the act or omission deprives a right protected by the United States Constitution or Federal law; and d) the act or omission caused harm to the plaintiff.

111. Ballard, Gibbs, Leavell, the DA Does and the Clintons are all persons.

112. Persons act under the color of state law when they are acting in their official capacity as a public employee or exercising the authority that state law gives them. Ballard, Gibbs, the DA Does and the Clintons all acted under color of state law as follows:

    a. Ballard acted under color of state law as the District Attorney to prosecute McGill without probable cause that he had committed *any* crime, much less the crime with which he was charged.

    b. Gibbs, Leavell, and the DA Does acted under color of state law as agents of the DA's Office, drawing their authority from Oklahoma law through Ballard's constitutional Office, to prosecute McGill without probable cause that he had committed *any* crime, much less the crime with which he was charged.

c.      The Clintons acted under color of state law because the DA's Office delegated its prosecutorial authority and discretion to the Clintons insofar as the DA's Office admitted that it only prosecuted McGill because the Clintons wanted him prosecuted. This renders the Clintons *de facto* agents of the DA's Office. The Clintons accordingly caused McGill to be prosecuted without probable cause that he had committed *any* crime, much less the crime with which he was charged.

113.    The acts and omissions of these Defendants (individually and collectively) deprived McGill of a right protected by the United States Constitution. Specifically, the acts and omissions of these Defendants violated McGill's right not to be prosecuted for a crime absent probable cause (as required by the Fourth Amendment) and thereby with due process of law as required by the Due Process Clause of the Fifth Amendment (both as applied to the States by the Fourteenth Amendment).

a.      The elements of malicious prosecution under Oklahoma law are established in Claim A-3 above.

b.      However, "[m]alicious prosecution does not automatically constitute a denial of due process" under the Fourth and Fifth Amendments. *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1431 (10th Cir. 1984), *vacated on other grounds by City of Lawton v. Lusby,* 474 U.S. 805 (1985). "Nevertheless, if the misuse of the legal procedure is egregious there may be a deprivation of constitutional dimensions for which a plaintiff can invoke § 1983." *Id.*

c.      Here, the misuse of the legal process was so egregious that it offends the probable cause requirements of the Fourth Amendment and thereby constituted a deprivation of Due Process actionable under the Fifth Amendment (as applied to the States by the Fourteenth Amendment).

i.      Specifically, as set forth in Claim A-3 above, Ballard, Gibbs, Leavell, the DA Does and the Clintons *actually* knew that there was no probable cause to prosecute McGill because his conduct was authorized by Oklahoma law and explicitly by a court order—the Easement Order—but prosecuted him anyway. And they continued to prosecute McGill even after he filed that evidence in the Criminal Proceedings—the judicial equivalent of shoving it into the Defendants' faces to ensure that they were aware of the lawfulness of his conduct and, therefore, the lawlessness of their conduct.

ii.      This conduct is so egregious as to shock the conscience and give rise to a claim under the Fourth and Fifth Amendments.

114.   McGill suffered harm from these acts and omissions (individually and collectively) as set forth in Section IV(I) above.

115.   Additionally, to overcome qualified immunity and impose personal liability against a government employee, a plaintiff must show that the defendant violated a clearly established right. A right is clearly established if, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he was doing violates that right.

a.    The Clintons were not government employees and are not, therefore, protected by qualified immunity in the first place.

b.    Nevertheless, the right of a person to be free from prosecution that lacks probable cause and is an egregious abuse of prosecutorial power is well established in this Circuit.

c.    Therefore, Ballard, Gibbs, Leavell, the DA Does and the Clintons each independently violated a clearly established right.

## B. FEDERAL CLAIMS AGAINST THE DA'S OFFICE

### 1.    Claim B-1: Municipal Liability (Pattern or Practice)

- Basis of Claim: 42 U.S.C. § 1983.
- Defendants: The DA's Office (including Ballard, Gibbs, Leavell, and the DA Does in their official capacities).

116.    Employees or agents of the DA's Office engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 through A-4 above.

117.    The DA's Office (including its employees and agents in their official capacities) are liable under a theory of municipal liability for the acts of their employees or agents under 42 U.S.C. § 1983 if the acts and/or omissions of the DA's Office's employees and agents are so prevalent in the day-to-day business of the DA's Office that they have become a de facto policy or custom.

118.    A de facto policy or custom may be proven in any of three ways: first, that the municipal entity itself engaged in a pattern of decisions that violated

constitutional rights, even without explicitly declaring a policy; second, that high-ranking policymakers act in a customary and impermissible manner; and, third, that the conduct of lower-level employees is so pervasive that the municipal entity or its high-ranking officials knew of the custom or recklessly disregarded its existence. All three methods of proof apply here.

a.   First, the DA's Office has directly engaged in a pattern of decisions that violate constitutional rights sufficient to establish municipal liability.

i.   It is the de facto policy and custom of the DA's Office to violate the constitutional rights of criminal defendants.

ii.   By way of example, the DA's Office violated Mr. Kraft's constitutional rights when Gibbs and Shields spied on the jury in that case.

iii.   By way of another example, the DA's Office has a pattern of prosecuting cases in which there was never probable cause to support such prosecution.

iv.   These examples, and the others that McGill reasonably expects to be able to prove after full discovery, establish that the DA's Office has itself engaged in a pattern and practice of unconstitutional conduct towards criminal defendants sufficient to establish municipal liability.

b.   Second and independently, high ranking policymakers have acted in a customary and impermissible manner sufficient to establish municipal liability.

i. While a municipal entity may not be held liable under 42 U.S.C. § 1983 merely upon a theory of respondeat superior, the actions of high-ranking officials can establish a governmental 'custom' even though such custom has not received formal approval through the municipal entity's official decision-making channels.

ii. Ballard, Gibbs, and Leavell were high-ranking policymakers with the authority to make charging decisions. Indeed, Ballard is the highest-ranking elected policymaker in the DA's Office and, indeed, *is* the DA's Office *de jure*.

iii. Ballard, Gibbs, and Leavell individually and collectively have engaged in a pattern or practice of violating the constitutional rights of criminal defendants, including—by way of example—Gibbs violating Mr. Kraft's rights by spying on the jury.

iv. These examples, those stated elsewhere herein, and the others that McGill reasonably expects to be able to prove after full discovery, establish that Ballard, Gibbs, and Leavell customarily and impermissibly violate the constitutional rights of criminal defendants including by prosecuting criminal defendants without probable cause.

c. Third and independently, the conduct of lower-level employees is so pervasive that the municipal entity or its high-ranking officials knew of the custom or recklessly disregarded its existence.

i.      Gibbs, Shields, and Leavell all violated constitutional rights of criminal defendants as set forth herein.

ii.      These violations, those stated elsewhere herein, and the others that McGill reasonably expects to be able to prove after full discovery demonstrate that unconstitutional conduct towards criminal defendants is so pervasive that the DA's Office and Ballard knew or recklessly disregarded the existence of these unconstitutional practices.

119.   Thus, the DA's Office is liable under a theory of municipal liability for McGill's damages under Claims A-1 through A-4 because there is a direct causal link between the municipal action and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

## 2.   Claim B-2: Municipal Liability (Single Decision by Final Policymaker)

- Basis of Claim: 42 U.S.C. § 1983.

- Defendants: The DA's Office (including Ballard, Gibbs, Leavell, and the DA Does in their official capacities).

120.   Employees or agents of the DA's Office engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 through A-4 above.

121.   The DA's Office (including its employees and agents in their official capacities) is liable under a theory of municipal liability for the acts of its employees and agents under 42 U.S.C. § 1983 if an official with final policy-making authority

takes some action that leads to a constitutional violation, even if the municipality itself has not adopted the policymaker's decision as a formal policy.

122.   Final policymaker liability results from a single decision made by an official acting as the final policymaker for the municipality for the subject matter in question. There are four requirements that a plaintiff must show to hold a local government liable: first, that the local governmental entity must have authority and responsibility over the governmental function and the official allegedly committing the constitutional tort; second, only those officials speaking with final policymaking authority for that local governmental entity may by their actions subject the government to liability; third, the challenged action must have been taken under a policy that was adopted by the final policymaker responsible under state law for making policy in the particular area of the local government's business; and, fourth, the official's adoption of the policy at issue must be sufficient to trigger Section 1983 liability concerning the act alleged to have caused the constitutional violation.

a.   On the first element, Ballard has responsibility over the operations of the DA's Office and, indeed, *is* the DA's Office *de jure*.

b.   On the second element, Ballard acted at all times during the events set forth herein with final policymaking authority.

c.   On the third element, Ballard acted under a policy of violating the constitutional rights of criminal defendants as set forth in Claims A-1 through A-4 above through his personal actions towards McGill. Moreover, as set forth in Claim

B-1 above, Ballard and the DA's Office also engaged in a pattern and practice of such conduct sufficient to constitute a *de facto* policy. Individually and collectively, these events establish that Ballard acted under an unconstitutional policy of his own making.

   d. On the fourth element, Ballard personally initiated and/or approved the charging, arrest, and prosecution of McGill, and directed Gibbs, Leavell, and the DA Does to charge, arrest, and prosecute McGill despite actual knowledge of the lack of probable cause.

123. Thus, the DA's Office is liable under a theory of municipal liability for McGill's damages under Claims A-1 through A-4 because there is a direct causal link between the municipal action and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

### 3. Claim B-3: Municipal Liability (Ratification)

- Basis of Claim: 42 U.S.C. § 1983.
- Defendants: The DA's Office (including Ballard, Gibbs, Leavell, and the DA Does in their official capacities).

124. Employees or agents of the DA's Office engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 through A-4 above.

125. The DA's Office (including its employees in their official capacities) is liable under a theory of municipal liability for the acts of its employees and agents under 42 U.S.C. § 1983 if a higher-ranking policymaker orders or ratifies a subordinate's unconstitutional action and the basis for it. Just as a single action on a

policymaker's part is sufficient to create a municipal policy, a single instance of ratification of a subordinates' actions can provide a basis for municipal liability.

126. Ballard, the top policymaker in the DA's Office ratified the unconstitutional conduct of Gibbs, Leavell, and the DA Does when he approved the charging, arrest, and prosecution of McGill despite having actual knowledge of the lack of probable cause (and, thereby, the constitutional violations)—making the deliberate choice to ratify their unlawful acts and omissions.

127. Thus, the DA's Office is liable under a theory of municipal liability for McGill's damages under Claims A-1 through A-4 because there is a direct causal link between the municipal action and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

### 4. Claim B-4: Municipal Liability (Failure to Train)

- Basis of Claim: 42 U.S.C. § 1983.
- Defendants: The DA's Office (including Ballard, Gibbs, Leavell, and the DA Does in their official capacities).

128. The DA's Office (including its employees in their official capacities) is liable under a theory of municipal liability for the acts of its employees and agents under 42 U.S.C. § 1983 if there was a violation of a Federally protected right; inadequate training of employees; and causation between the inadequate training and the plaintiff's injury.

129. All three elements are established here.

a.      Employees or agents of the DA's Office engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 through A-4 above.

b.      DA's Office employees, including Gibbs and Leavell, were not properly trained to know that they could not charge, arrest, and prosecute a person absent probable cause—as demonstrated by the fact that they did, in fact, charge, arrest, and prosecute McGill with actual and constructive knowledge that there was no probable cause to do so.

c.      The inadequate training led Gibbs, Leavell, and the DA Does to charge, arrest, and prosecute McGill without probable cause.

130.    Thus, the DA's Office is liable under a theory of municipal liability for McGill's damages under Claims A-1 through A-4 because there is a direct causal link between the municipal omission (failure to train) and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

### 5.      Claim B-5: Municipal Liability (Failure to Supervise)

- Basis of Claim: 42 U.S.C. § 1983.

- Defendants: The DA's Office (including Ballard, Gibbs, Leavell, and the DA Does in their official capacities).

131.    Employees or agents of the DA's Office engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 through A-4 above.

132. The DA's Office (including its employees in their official capacities) is liable under a theory of municipal liability for the acts of its employees and agents under 42 U.S.C. § 1983 if a supervisor acted under color of state law, the supervisor's subordinate deprived the plaintiff of a Federal right, and at least one of the following five sub-elements is proven:

a. The supervisor directed the employee in the act or failure to act that deprived the person of a particular federal right.

b. The supervisor set in motion a series of acts by the employee—or knowingly refused to terminate a series of acts by the employee—that the supervisor knew or reasonably should have known would cause the employee to deprive the person of a particular Federal right.

c. The supervisor both (a) knew that the employee was engaging in a series of acts and knew or reasonably should have known that the employee's conduct would deprive the person of a particular Federal right; and (b) the supervisor failed to act to prevent the employee from engaging in such conduct;

d. The supervisor both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause the employee to violate the person's constitutional rights; and (b) the deficiency or omission actually caused the employee to deprive the person of a constitutional right;

e.  The supervisor engaged in conduct that showed a reckless or callous indifference to the deprivation by the employee of the rights of others, and the supervisor's conduct was so closely related to the deprivation of the person's rights as to be the moving force that caused the ultimate injury.

133.  Ballard acted under color of state law as set forth in Claims A-1 through A-4 above.

134.  Ballard's subordinates Gibbs, Leavell, and the DA Does deprived McGill of constitutional rights as set forth in Claims A-1 through A-4 above.

135.  All five sub-elements (any one of which is sufficient to establish municipal liability) are met here:

a.  Ballard directed his subordinates Gibbs, Leavell, and the DA Does to charge, arrest, and prosecute McGill without probable cause.

b.  Independently, Ballard set in motion the charging, arrest, and prosecution of McGill by Gibbs, Leavell, and the DA Does—or knowingly refused to terminate the charging, arrest, and prosecution of McGill by them—that he knew or reasonably should have known would cause them to deprive McGill of a particular Federal right; specifically, the charging, arrest, and prosecution of McGill without probable cause.

c.  Independently, Ballard both (a) knew that Gibbs, Leavell, and the DA Does were engaging in a series of acts and knew or reasonably should have known

that the their conduct would deprive McGill of a particular Federal right; and (b) Ballard failed to act to prevent Gibbs, Leavell, and the DA Does from engaging in such conduct.

d.      Independently, Ballard both (a) disregarded the known or obvious consequence that failing to train his employees or omission would cause the employee to violate the person's constitutional rights as set forth in Claim B-4 above; and (b) the deficiency or omission actually caused his subordinates to deprive the person of a constitutional right as set forth in Claims A-1 through A-4 above.

e.      Independently, Ballard engaged in conduct that showed a reckless or callous indifference to the deprivation by Gibbs, Leavell, and the DA Does of the rights of others, and his conduct was so closely related to the deprivation of the McGill's rights as to be the moving force that caused the ultimate injury.

i.      As set forth in Claims A-1 through A-4 above, Ballard personally participated in the unconstitutional arrest and prosecution of McGill without probable cause.

ii.      Ballard showed reckless or callous indifference to the pattern or practice of unconstitutional conduct by his subordinates, as established in Claim B-1 above.

iii.     Ballard also recklessly or callously made the decision to charge, arrest, and prosecute McGill despite actual and constructive knowledge of the lack of probable cause as set forth in Claim B-2 above.

iv.     Ballard also recklessly or callously ratified the unconstitutional conduct of Gibbs, Leavell, and the DA Does.

v.     Ballard also recklessly or callously failed to train his subordinates, including Gibbs, Leavell, and the DA Does, so that they would not violate the constitutional rights of criminal defendants, as set forth in Claim B-4 above.

136.   Thus, the DA's Office is liable under a theory of municipal liability for McGill's damages under Claims A-1 through A-4 because there is a direct causal link between the municipal omission (failure to supervise) and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

## C. FEDERAL CLAIMS AGAINST THE DEPARTMENT

### 1.     Claim C-1: Municipal Liability (Pattern or Practice)

- Basis of Claim: 42 U.S.C. § 1983.
- Defendants: The Department (including Walton and the Sheriff Does in their official capacities).

137.   Employees or agents of the Department engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 and A-2 above.

138.    The Department (including its employees in their official capacities) are liable under a theory of municipal liability for the acts of their employees or agents under 42 U.S.C. § 1983 if the acts and/or omissions of the Department's employees and agents are so prevalent in the day-to-day business of the Department that they have become a de facto policy or custom.

139.    A de facto policy or custom may be proven in any of three ways: first, that the municipal entity itself engaged in a pattern of decisions that violated constitutional rights, even without explicitly declaring a policy; second, that high-ranking policymakers act in a customary and impermissible manner; and, third, that the conduct of lower-level employees is so pervasive that the municipal entity or its high-ranking officials knew of the custom or recklessly disregarded its existence. The first and third methods of proof apply here.

a.    First, the Department has directly engaged in a pattern of decisions that violate constitutional rights sufficient to establish municipal liability.

i.    It is the de facto policy and custom of the Department to violate the constitutional rights of criminal defendants.

ii.    By way of example, the Department has a pattern of arresting persons without probable cause.

iii.    This example, and the others that McGill reasonably expects to be able to prove after full discovery, establish that the Department has

itself engaged in a pattern and practice of unconstitutional conduct towards criminal defendants sufficient to establish municipal liability.

   b.   Second and independently, the conduct of lower-level employees is so pervasive that the municipal entity or its high-ranking officials knew of the custom or recklessly disregarded its existence.

      i.   The Sheriff Does violated constitutional rights of criminal defendants as set forth herein.

      ii.   These violations, those stated elsewhere herein, and the others that McGill reasonably expects to be able to prove after full discovery demonstrate that unconstitutional conduct towards criminal defendants is so pervasive that the Department and Walton knew or recklessly disregarded the existence of these unconstitutional practices.

   140.   Thus, the Department is liable under a theory of municipal liability for McGill's damages under Claims A-1 and A-2 because there is a direct causal link between the municipal action and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

## 2. Claim C-2: Municipal Liability (Failure to Train)

- Basis of Claim: 42 U.S.C. § 1983.

- Defendants: The Department (including Walton and the Sheriff Does in their official capacities).

141.    The Department (including its employees in their official capacities) is liable under a theory of municipal liability for the acts of its employees and agents under 42 U.S.C. § 1983 if there was a violation of a Federally protected right; inadequate training of employees; and causation between the inadequate training and the plaintiff's injury.

142.    All three elements are established here.

a.    Employees or agents of the Department engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 and A-2 above.

b.    Department employees, the Sheriff Does, were not properly trained to know that they could not arrest and search a person absent probable cause—as demonstrated by the fact that they did, in fact, arrest and search McGill without probable cause.

c.    The inadequate training led the Sheriff Does to arrest and search McGill without probable cause.

143.    Thus, the Department is liable under a theory of municipal liability for McGill's damages under Claims A-1 and A-2 because there is a direct causal link

between the municipal omission (failure to train) and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

### 3.  Claim C-3: Municipal Liability (Failure to Supervise)

- Basis of Claim: 42 U.S.C. § 1983.
- Defendants: The Department (including Walton and the Sheriff Does in their official capacities).

144.   Employees or agents of the Department engaged in violations of Federal law actionable under 42 U.S.C. § 1983 pursuant to Claims A-1 and A-2 above.

145.   The Department (including its employees in their official capacities) is liable under a theory of municipal liability for the acts of its employees and agents under 42 U.S.C. § 1983 if a supervisor acted under color of state law, the supervisor's subordinate deprived the plaintiff of a Federal right, and at least one of the following five sub-elements is proven:

a.   The supervisor directed the employee in the act or failure to act that deprived the person of a particular federal right.

b.   The supervisor set in motion a series of acts by the employee—or knowingly refused to terminate a series of acts by the employee—that the supervisor knew or reasonably should have known would cause the employee to deprive the person of a particular Federal right.

c.   The supervisor both (a) knew that the employee was engaging in a series of acts and knew or reasonably should have known that the employee's

conduct would deprive the person of a particular Federal right; and (b) the supervisor failed to act to prevent the employee from engaging in such conduct;

     d.    The supervisor both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause the employee to violate the person's constitutional rights; and (b) the deficiency or omission actually caused the employee to deprive the person of a constitutional right;

     e.    The supervisor engaged in conduct that showed a reckless or callous indifference to the deprivation by the employee of the rights of others, and the supervisor's conduct was so closely related to the deprivation of the person's rights as to be the moving force that caused the ultimate injury.

146.   The Sheriff Does acted under color of state law as set forth in Claims A-1 and A-2 above.

147.   Walton's subordinates—the Sheriff Does—deprived McGill of constitutional rights as set forth in Claims A-1 and A-2 above.

148.   Two of the five sub-elements (either one of which is sufficient to establish municipal liability) are met here:

     a.    Walton both (a) knew that the Sheriff Does were engaging in a series of acts and knew or reasonably should have known that the their conduct would deprive McGill of a particular Federal right; and (b) Walton failed to act to prevent the Sheriff Does from engaging in such conduct.

b.   Independently, Walton both (a) disregarded the known or obvious consequence that failing to train his employees or omission would cause the employee to violate the person's constitutional rights, including as set forth in Claim C-2 above; and (b) the deficiency or omission actually caused his subordinates to deprive the person of a constitutional right as set forth in Claims A-1 and A-2 above.

149.   Thus, the DA's Office is liable under a theory of municipal liability for McGill's damages under Claims A-1 and A-2 because there is a direct causal link between the municipal omission (failure to supervise) and the deprivation of McGill's Federal rights in the form of his unconstitutional arrest and prosecution.

## D. FEDERAL CLAIMS AGAINST ALL DEFENDANTS
### Claim D: Conspiracy to Violate Civil Rights

- Basis of Claim: 42 U.S.C. § 1985.

- Defendants: All Defendants.

150.   The elements of a claim under 42 U.S.C. § 1985 are: a) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; b) an act in furtherance of the conspiracy; and c) a resulting injury.

151.   There was a conspiracy between all of the Defendants to deprive McGill of the equal protection of the laws. Specifically, as set forth throughout this Complaint, the individual defendants acted intentionally in concert to charge, arrest, search, imprison, and prosecute McGill despite actual and constructive knowledge of the lack of probable cause that he had committed *any* crime, much less the crime with which he was charged.

152.   Each Defendant made at least one overt act in furtherance of the conspiracy as set forth herein. By way of example:

a.   Ballard (and through him the DA's Office) approved the charging, arrest, and prosecution of McGill as the District Attorney despite actual and constructive knowledge of the lack of probable cause.

b.   Gibbs, Leavell, and the DA Does prosecuted McGill despite actual and constructive knowledge of the lack of probable cause.

c.   The Department and the Sheriff Does arrested and imprisoned McGill despite actual and constructive knowledge of the lack of probable cause.

d.   The Clintons falsely accused McGill of a crime—destroying their property—despite actual and constructive knowledge that he was acting under the explicit authority granted to him by the Easement Order and, therefore, that he committed no crime. The Clintons further induced the DA's Office to charge and prosecute, and the Department to arrest, McGill despite the lack of probable cause.

153.   McGill suffered injuries as a result of the conspiracy, as set forth herein.

## E. OKLAHOMA CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

### 1.   Claim E-1: Assault & Battery

- Basis of Claim: Oklahoma Common Law.
- Defendants: Sheriff Does (Personal).

154.   The elements of assault and battery are the willful, unlawful, use of force of violence, upon another person, causing damage.

155.   The Sheriff Does intentionally (a greater standard than willfulness) used force to arrest McGill.

156.   The arrest was unlawful because it was without probable cause.

157.   The Sheriff Does used force or violence to take McGill into custody, including placing him in handcuffs and restraining his movements, searching him incident to the unlawful arrest, and 'strip' searching him in the Rogers County Jail which included multiple demeaning assaults upon his person.

158.   McGill is a person.

159.   McGill suffered damage from the assault and battery as set forth herein and including, by way of example, physical injury and emotional distress.

160.   The acts of the Sheriff Does constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they assaulted and battered McGill with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the

consequences for McGill of their assault and battery and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 2.     Claim E-2: Conspiracy to Commit Assault & Battery

- Basis of Claim: Oklahoma Common Law.
- Defendants: Individual Defendants.

161.    Civil conspiracy is an intentional tort and consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means.

162.    The elements are of civil conspiracy under Oklahoma law are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result.

163.    The Individual Defendants consist of two or more persons.

164.    The object to be accomplished was the arrest of McGill by force constituting assault and battery.

165.    The Individual Defendants had a meeting of the minds on the object or course of action insofar as they all undertook overt acts in concert with each other and in furtherance of the unlawful objective with actual and constructive knowledge of the lack of probable cause and, therefore, the unlawfulness of their actions.

166.    The Individual Defendants engaged, individually and collectively, in one or more unlawful overt acts in furtherance of the conspiracy as set forth herein. By way of example:

a.    The Clintons falsely reported that McGill had committed a crime despite their actual and constructive knowledge that he was acting under the authority granted by the Easement Order.

b.    Ballard, Gibbs, Leavell, and the DA Does charged McGill with a crime and caused him to be unlawfully arrested (read: assaulted) and imprisoned despite their actual and constructive knowledge of the lack of probable cause.

c.    The Sheriff Does arrested McGill, using force upon him, despite their actual and constructive knowledge of the lack of probable cause.

167.    McGill suffered damages as set forth herein, including in Claim E-1 above.

168.    The acts of the Individual Defendants constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their

employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 3.    Claim E-3: False Arrest

- Basis of Claim: Oklahoma Common Law.
- Defendants: Sheriff Does (Personal).

169.    The elements of false arrest are an arrest without probable cause.

170.    The Criminal Proceedings, of which this Court takes judicial notice, establishes that the Sheriff Does arrested McGill without probable cause.

171.    The acts of the Sheriff Does constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

4.      **Claim E-4: Conspiracy to Commit False Arrest**

- Basis of Claim: Oklahoma Common Law.

- Defendants: Individual Defendants.

172.    Civil conspiracy is an intentional tort and consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means.

173.    The elements are of civil conspiracy are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result.

174.    The Individual Defendants consist of two or more persons.

175.    The object to be accomplished was the false arrest of McGill.

176.    The Individual Defendants had a meeting of the minds on the object or course of action insofar as they all undertook overt acts in concert with each other and in furtherance of the unlawful objective with actual and constructive knowledge of the lack of probable cause and, therefore, the unlawfulness of their actions.

177.    The Individual Defendants engaged, individually and collectively, in one or more unlawful overt acts in furtherance of the conspiracy as set forth herein. By way of example:

a.      The Clintons falsely reported that McGill had committed a crime despite their actual and constructive knowledge that he was acting under the authority granted by the Easement Order.

b. Ballard, Gibbs, Leavell, and the DA Does charged McGill with a crime and caused him to be arrested and imprisoned despite their actual and constructive knowledge of the lack of probable cause.

c. The Sheriff Does arrested McGill, despite their actual and constructive knowledge of the lack of probable cause.

178. McGill suffered damages as set forth herein, including in Claim E-3 above.

179. The acts of the Individual Defendants constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 5.   Claim E-5: False Imprisonment

- Basis of Claim: Oklahoma Common Law.
- Defendants: Sheriff Does (Personal).

180. The elements of false imprisonment are the restraint the liberty of a person without probable cause to seize (read: arrest) the person.

181.    The Criminal Proceedings, of which this Court takes judicial notice, establishes that the Sheriff Does arrested McGill and restrained his liberty without probable cause for a lengthy period including an initial search, transportation to the Jail, and processing at the Jail (which included a demeaning 'strip' search).

182.    The acts of the Sheriff Does constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 6.    Claim E-6: Conspiracy to Commit False Imprisonment

- Basis of Claim: Oklahoma Common Law.
- Defendants: Individual Defendants.

183.    Civil conspiracy is an intentional tort and consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means.

184.    The elements are of civil conspiracy are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result.

185.    The Individual Defendants consist of two or more persons.

186.    The object to be accomplished was the false imprisonment of McGill.

187.    The Individual Defendants had a meeting of the minds on the object or course of action insofar as they all undertook overt acts in concert with each other and in furtherance of the unlawful objective with actual and constructive knowledge of the lack of probable cause and, therefore, the unlawfulness of their actions.

188.    The Individual Defendants engaged, individually and collectively, in one or more unlawful overt acts in furtherance of the conspiracy as set forth herein. By way of example:

        a.    The Clintons falsely reported that McGill had committed a crime despite their actual and constructive knowledge that he was acting under the authority granted by the Easement Order.

        b.    Ballard, Gibbs, Leavell, and the DA Does charged McGill with a crime and caused him to be arrested and imprisoned despite their actual and constructive knowledge of the lack of probable cause.

        c.    The Sheriff Does imprisoned McGill, despite their actual and constructive knowledge of the lack of probable cause.

189.    McGill suffered damages as set forth herein, including in Claim E-5 above.

190.    The acts of the Individual Defendants constitute gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 7.    Claim E-7: Defamation *Per Se*

- Basis of Claim: Oklahoma Common Law.

- Defendants: Individual Defendants.

191.    The elements of defamation *per se* under Oklahoma law are 1) a false and defamatory statement, 2) an unprivileged publication to a third party, 3) fault amounting at least to negligence on the part of the publisher, and 4) the published statement, on its face, renders the statement defamatory and directed specifically at the plaintiff. Under the common law, there are four traditional categories that qualify for *per se* treatment: a) falsely stating that someone committed a crime or immoral conduct; b) falsely stating that that someone had a contagious, infectious, or loathsome disease; c) falsely stating that someone engaged in sexual misconduct or was unchaste; or d) falsely stating something harmful about someone's business,

trade, or profession. Modern caselaw establishes that other statements may constitute defamation *per se*.

192.   The Individual Defendants each made a statement that was false and defamatory: that McGill committed the felony of malicious injury to property.

193.   Each Individual Defendant made an unprivileged publication to a third party. By way of example:

     a.   The Clintons falsely told the Department, the DA's Office, and the Oklahoma Court that McGill committed a crime.

     b.   Ballard, Gibbs, Leavell, and the Sheriff Does falsely told the Oklahoma Court and the public that McGill committed a crime.

194.   Each Individual Defendant had actual and constructive knowledge that their statements were false and that there was no probable cause to believe that McGill had committed a crime because he was merely doing something explicitly authorized by the Easement Order. Therefore, each Individual Defendant was at least negligent—and in fact acted intentionally (which includes grossly negligent, and willful/wanton/reckless conduct)—in publishing the false statement to a third party.

195.   The statements by each Individual Defendant qualify for *per se* treatment because they each were the false allegation that McGill specifically committed a crime.

196.    The acts of the Individual Defendants constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

197.    McGill respectfully reserves the right to amend and plead defamation *pro quod* if the Court determines that this claim does not qualify for *per se* treatment—and respectfully puts the Defendants on notice that he will do so.

### 8.    Claim E-8: Malicious Prosecution

- Basis of Claim: Oklahoma Common Law.
- Defendants: Ballard (Personal); Gibbs (Personal); Leavell (Personal); and the DA Does.

198.    The elements of malicious prosecution under Oklahoma law are: 1) the bringing of an original action by the defendant, 2) its successful termination in plaintiff's favor, 3) want of probable cause, 4) malice, and 5) damages.

199.    Ballard, Gibbs, Leavell, and the DA Does brought the Criminal Proceedings against McGill.

200.   The Criminal Proceedings terminated in favor of McGill when the Oklahoma Court dismissed the criminal charge against him.

201.   The Oklahoma Court explicitly found that there was no probable cause to prosecute McGill.

202.   Ballard, Gibbs, Leavell, and the DA Does acted with malice as set forth herein, particularly in Claim A-3 above.

203.   McGill suffered damages as set forth herein including the costs and attorneys' fees to defend against the unlawful prosecution, emotional distress, and damage to his personal and professional reputations.

204.   The acts of the Individual Defendants constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 9.  Claim E-9: Conspiracy to Commit Malicious Prosecution

- Basis of Claim: Oklahoma Common Law.

- Defendants: Individual Defendants.

205.  Civil conspiracy is an intentional tort and consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means.

206.  The elements are of civil conspiracy are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result.

207.  The Individual Defendants consist of two or more persons.

208.  The object to be accomplished was the malicious prosecution of McGill.

209.  The Individual Defendants had a meeting of the minds on the object or course of action insofar as they all undertook overt acts in concert with each other and in furtherance of the unlawful prosecution of McGill with actual and constructive knowledge of the lack of probable cause and, therefore, the unlawfulness of their actions.

210.  The Individual Defendants engaged, individually and collectively, in one or more unlawful overt acts in furtherance of the conspiracy as set forth herein. By way of example:

  a.  The Clintons falsely reported that McGill had committed a crime despite their actual and constructive knowledge that he was acting under the authority granted by the Easement Order.

  b.  Ballard, Gibbs, Leavell, and the DA Does charged McGill with a crime despite their actual and constructive knowledge of the lack of probable cause.

211. McGill suffered damages as set forth herein, including in Claim E-8 above.

212. The acts of the Individual Defendants constitute gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

**10.    Claim E-10: Abuse of Judicial Process**

- Basis of Claim: Oklahoma Common Law.

- Defendants: Ballard (Personal); Gibbs (Personal); Leavell (Personal); the DA Does, and the Clintons.

213.   The elements of abuse of process are: 1) issuance of process; 2) an ulterior purpose; and 3) a willful act in the use of process not proper in the regular conduct of the proceeding.

214.   Ballard, Gibbs, Leavell, the DA Does, and the Clintons collectively issued process to McGill in the form of a warrant for his arrest.

215.   Ballard, Gibbs, Leavell, the DA Does, and the Clintons had an ulterior purpose for issuing the process: to punish McGill for political reasons for his standing up to the Clintons—a well-connected family of long standing in Rogers County—and exercising his rights under the Easement Order.

216.   Ballard, Gibbs, Leavell, the DA Does, and the Clintons engaged in willful acts in the use of process not proper in the regular conduct of the proceeding as set forth herein, in particular by the Clintons reporting McGill for a crime he did not commit (and could not have committed under the Easement Order), and the DA's Office employees charging, arresting, and prosecuting McGill with actual and constructive knowledge of the lack of probable cause.

217.   The acts of the Individual Defendants constitute gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of

the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 11. Claim E-11: Trespass to Land

- Basis of Claim: Oklahoma Common Law.
- Defendants: Sheriff Does (Personal).

218.   The elements of trespass to land under Oklahoma law are the unlawful entry onto the land of another.

219.   The Sheriff Does entered upon McGill's land to arrest him.

220.   The Criminal Proceedings establish that there was no probable cause to arrest McGill. Therefore, the entry by the Sheriff Does onto his land for the purposes of unlawfully arresting him was itself unlawful insofar as the Sheriff Does were without lawful authority or privilege to enter onto McGill's land except with his permission—which McGill did not provide.

221.   The acts of the Sheriff Does constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the

consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 12.    Claim E-12: Trespass to Chattels

- Basis of Claim: Oklahoma Common Law.
- Defendants: Sheriff Does (Personal).

222.    The elements of trespass to chattels under Oklahoma law is the wrongful and intentional interference of the possession of someone's personal property.

223.    The Sheriff Does intentionally interfered with the possession of McGill's personal property when they removed his personal property, including his clothes, during his arrest, the search incident to the arrest, the 'strip' search at the Rogers County Jail, and his confinement in the Jail.

224.    The interference was wrongful because the lawfulness of the Sheriff Does' actions was predicated upon the lawfulness of the arrest—and the Criminal Proceedings establishes that the arrest was unlawful because it was without probable cause—and the Sheriff Does had actual and constructive knowledge that the arrest and imprisonment of McGill was without probable cause.

225.    The acts of the Sheriff Does constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

### 13.    Claim E-13: Intentional Infliction of Emotional Distress

- Basis of Claim: Oklahoma Common Law.

- Defendants: Individual Defendants.

226.    The elements of intentional infliction of emotional distress under Oklahoma law are: 1) that the tortfeasor acted intentionally or recklessly; 2) that the tortfeasor's conduct was extreme and outrageous; 3) that plaintiff actually experienced emotional distress; and 4) that the emotional distress was severe.

227.    The Individual Defendants acted intentionally or recklessly to falsely report that McGill had committed a crime and thereafter to charge, arrest, and prosecute McGill without probable cause.

228.    These acts were extreme or outrageous because they knowingly violated McGill's constitutional rights with malicious intent as set forth herein.

229.    McGill actually experienced material emotional distress.

230.    The emotional distress was severe and significantly impeded upon the ability of McGill to perform basic daily tasks such as sleeping, working, and caring for himself.

231.    The acts of the Individual Defendants constitutes gross negligence and willful and wanton conduct amounting to reckless disregard of McGill's rights insofar as they committed the acts and omissions with actual and constructive knowledge of the lack of probable cause and, therefore, acted with at least conscious indifference to the consequences for McGill of their acts and omissions and, indeed, actual malice and intent towards McGill as set forth above. Their conduct was knowingly unconstitutional (read: malicious) and, therefore, also outside the scope of their employment. Accordingly, they forfeit any immunity under the Oklahoma Governmental Tort Claims Act.

## VI. SUMMARY OF CLAIMS BY DEFENDANT

232.    For the sake of clarity and to ensure each Defendant is properly on notice of the claims against him, her, or it, the claims are broken down below by Defendant.

    a.    Ballard (Personal): A-1, A-2, A-3, A-4, D, E-2, E-4, E-6, E-7, E-8, E-9, E-10, E-13.

b.      Gibbs (Personal): A-1, A-2, A-3, A-4, D, E-2, E-4, E-6, E-7, E-8, E-9, E-10, E-13.

c.      Leavell (Personal): A-1, A-2, A-3, A-4, D, E-2, E-4, E-6, E-7, E-8, E-9, E-10, E-13.

d.      The DA Does (Personal): A-1, A-2, A-3, A-4, D, E-2, E-4, E-6, E-7, E-8, E-9, E-10, E-13.

e.      The Sheriff Does (Personal): A-1, A-2, D, E-1, E-2, E-3, E-4, E-5, E-6, E-7, E-9, E-11, E-12, E-13.

f.      The Clintons (Personal): A-1, A-2, A-3, A-4, D, E-2, E-4, E-6, E-7, E-9, E-10, E-13.

g.      The DA's Office (including official capacity claims against Ballard, Gibbs, Leavell and the DA Does): B-1, B-2, B-3, B-4, B-5, and D.

h.      The Department (including official capacity claims against Walton and the Sheriff Does): C-1, C-2, C-3, and D.

# VII. JURY DEMAND

McGill demands a trial by jury on all issues so triable.

## VIII.   REMEDIES & PRAYER FOR RELIEF

McGill requests that the Court declare, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that the Defendants individually and collectively violated his rights protected by Federal law as set forth herein.

McGill requests that the Court enjoin the Defendants from further violation of his rights.

McGill requests that the Court award him the following monetary damages:

- Compensatory damages for physical injury, emotional distress, and damage to personal and professional reputation.

- Nominal damages for any claims that establish a violation of law but for which no actual damages were incurred.

- Punitive damages against the individual defendants in their personal capacities only, to the maximum extent permitted by law, and in an amount to be determined by the jury at trial.

- His costs and attorneys' fees in prosecuting this action as required by 42 U.S.C. § 1988.

- Pre and post-judgment interest.

- Any and all other monetary damages permitted by rule or law.

McGill finally respectfully requests that the Court provide such other relief as this Court in its judgment finds just and equitable.

Respectfully submitted this 24th day of August 2023.

HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.


/s/ J. Kirk McGill
Dr. Joshua Kirk McGill, Esq.

521 E 2nd St Suite 1200
Tulsa, Oklahoma 74120

Email: kmcgill@hallestill.com
Tele: (720) 512-5820
Fax: (918) 594-0505

*Attorneys for Plaintiff Samuel C. McGill, Jr.*