# United States District Court
## for the Northern District of Oklahoma

---

Case No. 23-cv-365-JDR-MTS

---

SAMUEL CURTIS MCGILL, JR.,

*Plaintiff*,

*versus*

MATT BALLARD; GEORGE GIBBS, JR.; MARY LEAVELL; ROGERS COUNTY DISTRICT ATTORNEY'S OFFICE, *through Matt Ballard in his official capacity as District Attorney*; ROGERS COUNTY SHERIFF'S DEPARTMENT, *through Scott Walton in his official capacity as Sheriff*; JOSEPH CLINTON; CANDY CLINTON; JOHN AND JANE DOES,

*Defendants*.

---

## OPINION AND ORDER

---

Good fences may make good neighbors, but the same cannot be said of lawsuits. The neighbors in this case, Plaintiff Samuel Curtis McGill, Jr. and Defendants Joseph and Candy Clinton, are proof of that. The Clintons own land that is burdened by a 30-foot easement. Mr. McGill has the right to use that easement to access his property, and in May 2021, he removed part of a gate and a fence belonging to the Clintons in order to do so. In response, the Clintons called the sheriff. Mr. McGill was arrested and charged with malicious injury to property. The charge was ultimately dismissed, but that did not end the matter: Mr. McGill sued the Clintons, the Rogers County Sheriff's Department, the Rogers County District Attorney's Office, a former district attorney, and two assistant district attorneys for their role in his arrest and prosecution. The District Attorney's Office and its employees have moved to dismiss the claims against them on immunity grounds [Dkt. 20],

No. 23-cv-365

and the Sheriff's Department has filed a motion to dismiss for failure to state a viable claim against it under 42 U.S.C. §§ 1983 and 1985 [Dkt. 21]. For the reasons set forth below, the District Attorneys' motion [Dkt. 20] is granted in part and denied in part. The Sheriff's motion [Dkt. 20] is granted.

I[1]

Mr. McGill's father, Samuel McGill, Sr., owned real property in Rogers County that could not be accessed by public roads. He was awarded a 30-foot-wide easement in March 2017 that burdened property owned by Defendants Joseph and Candy Clinton. The easement afforded Sam McGill, Sr. the right to access his property via a new road and, when necessary, the right to temporarily remove cross-members from the entry gate providing access to the easement and road.

The property and the easement were transferred to Plaintiff Samuel McGill, Jr., who decided to move a manufactured home and other vehicles onto the property. The manufactured home was too large to pass through the gate at the easement's entrance, so Mr. McGill (or, more precisely, his attorney) contacted the Clintons (through their attorney) to coordinate the removal of the gate's cross member and a portion of a fence that allegedly impeded the easement. The Clintons refused his request to remove the impediments. Mr. McGill called the Rogers County Sheriff's Department and asked for assistance in enforcing the easement. This request was also refused. Mr. McGill sought relief in state court, but neither he nor his attorney held out any hope for a swift resolution.

Mr. McGill, finding himself at both a legal and physical impasse, took matters into his own hands. On the advice of his attorney, he removed the cross-member and a portion of the Clintons' fence and began moving his

---

[1] The following facts are drawn from Mr. McGill's complaint and are accepted as true for purposes of this opinion. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

No. 23-cv-365

manufactured home onto his property. When the Clintons discovered McGill's self-remedy, they called the Sheriff's Department. The Department sent a deputy to the property. Mr. McGill told the deputy that, as the successor to the easement, he had the right to remove the obstructions to his property and had done so on the advice of his attorney. Mr. McGill provided the deputy with a copy of the easement order, and the deputy left. Mr. McGill moved the manufactured home onto his property, but he did not replace the cross-member because the Clintons told him "not to touch 'their' property." Dkt. 2 at ¶ 43.

About two months later, Mr. McGill was charged with malicious injury to property and arrested. He was subjected to a search incident to the arrest and a second search at the Rogers County jail. Mr. McGill retained counsel and fought the charge, arguing that the easement order authorized him to remove the gate's cross-member and the fencing impeding the easement. The District Attorney's Office refused to withdraw the charge. Over a year later, Mr. McGill filed a motion to dismiss the criminal charge for want of probable cause, which the District Attorney's Office contested. The Rogers County District Court granted Mr. McGill's motion, and the charge was later expunged from his record.

II

Mr. McGill sued the Clintons, the District Attorney's Office, District Attorney Matt Ballard, Assistant District Attorneys George Gibbs, Jr., and Mary Leavell, the Rogers County Sheriff's Department, and an unknown number of unidentified individuals involved in his arrest and prosecution. He alleges that the District Attorney's Office and its agents knew that Mr. McGill was acting lawfully but prosecuted him anyway; the Sheriff's Department knew it lacked probable cause to believe Mr. McGill had committed a crime but arrested and jailed him anyway; and the Clintons orchestrated the events that resulted in his arrest and prosecution. He argues that each of the Defendants violated his federal rights and state law, and he asks for an award of

No. 23-cv-365

damages and an order enjoining the Defendants from further violating his rights. Dkt. 2 at 73.[2]

The Clintons have answered Mr. McGill's complaint, but the remaining Defendants have moved to dismiss Mr. McGill's claims. Mr. Ballard, Mr. Gibbs, and Ms. Leavell argue that they are immune from suit with respect to any claims brought against them in their individual capacities. Dkt. 20. The District Attorney's Office argues that the Eleventh Amendment bars both the claims asserted against it and the claims asserted against Mr. Ballard, Mr. Gibbs, and Ms. Leavell in their official capacities. *Id.* And the Sheriff's Department contends that Mr. McGill's complaint fails to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 21.

To withstand the parties' motions, Mr. McGill's complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The allegations, when taken as true, must demonstrate that Mr. McGill's right to relief is not merely speculative. *Id.* at 555. In other words, the Court must determine whether the complaint provides a "reason to believe that [Mr. McGill] has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

A

The Court begins its assessment with Mr. McGill's federal claims against Mr. Ballard, Mr. Gibbs, and Ms. Leavell in their individual capacities, all of which are brought under 42 U.S.C. § 1983.[3] *See* Dkt. 2 at ¶¶ 92-115. Mr. McGill alleges that those Defendants violated his rights under the Fourth Amendment, the Fifth Amendment, and the Due Process Clause of the

---

[2] All citations utilize CM/ECF pagination.

[3] Mr. McGill's official-capacity claims are addressed in Section II(C), *infra*.

No. 23-cv-365

Fourteenth Amendment because they charged, arrested, and prosecuted Mr. McGill without probable cause to believe that he had committed a crime. *Id.* The Defendants respond that, even if the facts alleged by Mr. McGill are true, the doctrines of absolute and qualified immunity bar Mr. McGill's claims.

The doctrine of prosecutorial immunity operates as a complete bar to claims for damages under 42 U.S.C. § 1983. *See Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1208 (10th Cir. 2022). This common-law doctrine seeks to protect the integrity of the judicial process (not prosecutors) by permitting prosecuting attorneys to perform their roles vigorously and independently, without fear of retaliatory litigation. *Id.* Within the Tenth Circuit, courts assessing the applicability of the doctrine adopt a "functional approach" focused on the role performed by the prosecutor at the time of the challenged conduct. *Id.* at 1208-1209 (quoting *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019)). Of course, prosecutors engage in a range of activities, some of which are more intimately associated with the judicial process than others. *Id.* Thus, courts must consider prosecutorial conduct on a continuum; the closer an action is to the "judicial phase of the criminal process," the more likely it is that the prosecutor will be immune from suit. *Id.* at 1209 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

Conduct that is intimately associated with initiating and pursuing a criminal case—such as gathering and evaluating evidence, determining whether probable cause exists, and deciding to prosecute a case—falls on the near side of that continuum and is shielded by absolute immunity. *Id.* ("We begin with an obvious benchmark: a prosecutor is absolutely immune when functioning 'within the scope of his duties in initiating and pursuing a criminal prosecution.'" (quoting *Imbler*, 424 U.S. at 410)). This is true even if the prosecutor makes false statements when engaging in that conduct or files charges without a legal basis for doing so. *E.g., id.* at 1210-11 (recognizing that the plaintiff could not defeat absolute immunity by showing that the statements made to support a probable cause finding were false or that the

No. 23-cv-365

prosecutor lacked sufficient evidence to establish probable cause). The focus is on the action taken, "not on the harm that the conduct may have caused or . . . whether it was lawful." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). Thus, charges that are "inherently related to a prosecutor's role as an advocate," such as filing charges against a defendant, will be "protected by absolute immunity whether or not probable cause exists." *Chilcoat*, 41 F.4th at 1211.

Mr. McGill challenges conduct that falls at or near the "obvious benchmark" where absolute prosecutorial immunity applies. *Id.* at 1209. He alleges that Mr. Ballard, Mr. Gibbs, and Ms. Leavell obtained a warrant to arrest Mr. McGill without disclosing that Mr. McGill had an easement and a right to remove property impinging on that easement, charged Mr. McGill with malicious injury to property, prosecuted him for that charge, refused to withdraw the charge despite knowing they lacked probable cause to pursue it, and contested Mr. McGill's motion to dismiss. *See* Dkt. 2 at ¶¶ 44, 47, 55, 70, 95. These are core prosecutorial duties inherently tied to the Defendants' roles as advocates for the state, and they are shielded by the doctrine of absolute prosecutorial immunity.[4]

Mr. McGill argues the question of whether the Defendants are entitled to immunity is a fact-based inquiry that cannot be resolved at this stage of the pleadings. *See* Dkt. 27 at 15, 15 n.2 (arguing that Defendants "cannot prove" absolute immunity and that Mr. McGill "will argue" that "Defendants committed acts outside of their prosecutorial functions"). This contention is without merit. Courts routinely consider the availability of prosecutorial

---

[4] *See Kalina v. Fletcher*, 522 U.S. 118, 126-29 (1997) (holding that activities pertaining to the preparation and filing of charging documents are protected by absolute immunity); *Burns v. Reed*, 500 U.S. 478, 491 (1991) (recognizing that the prosecutor's presentation of evidence to support a motion for a search warrant "clearly involve[d]" his role as state's advocate); *Chilcoat*, 41 F.4th at 1210-11 (granting immunity to claims based on allegedly false statements made to support probable cause finding).

No. 23-cv-365

immunity at the pleading stage. *E.g., Van Cleave v. City of Marysville, Kansas*, 185 F. Supp. 2d 1212, 1213-15 (D. Kan. 2002) (dismissing claim based on prosecutor's alleged failure to conduct an adequate investigation). The question presented by a Rule 12(b)(6) motion is not whether Mr. McGill *could* allege that a prosecutor engaged in conduct that falls on the far side of the continuum and, consequently, is not shielded by prosecutorial immunity; the question is whether he *has alleged* that conduct in his complaint. *Twombly*, 550 U.S. at 556. Mr. McGill has not pointed to any allegations of conduct that falls outside the scope of the Defendants' prosecutorial functions.[5] As a result, he has not given this Court any "reason to believe that [he] has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk*, 493 F.3d at 1177.

In an attempt to salvage his claims, Mr. McGill argues that, even if his claims for *damages* are barred, he should nevertheless be permitted to pursue his claims for injunctive relief against Mr. Ballard, Mr. Gibbs, and Ms. Leavell. Dkt. 27 at 13-16. This argument also lacks merit, at least insofar as it applies the claims asserted against those Defendants in their individual capacities. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). There is no legal basis to support Mr. McGill's claims for injunctive relief against the individual prosecutors. Because Mr. McGill cannot seek injunctive relief against Mr. Ballard, Mr. Gibbs, or Ms. Leavell in their individual capacities, and because his claims for

---

[5] Mr. McGill argues in a footnote [Dkt. 27 at 15, n.2] that he has alleged that Mr. Ballard, Mr. Gibbs, and Ms. Leavell made "defamatory statements" about him. But the only statements he refers to are those made in the context of the prosecution of the criminal case. *See* Dkt. 2 at ¶ 193. The complaint does not identify any allegedly defamatory statements that were unrelated to the prosecution of criminal charges. *Cf. Buckley*, 509 U.S. at 277-78 (finding that comments a press conference were not connected to the prosecutor's role as an advocate).

No. 23-cv-365

damages under against those Defendants are barred by the doctrine of absolute prosecutorial immunity, Mr. McGill's federal claims against the prosecutors must be dismissed.

B

The Court next turns to Mr. McGill's state-law claims against Mr. Ballard, Mr. Gibbs, and Ms. Leavell in their individual capacities, all of which arise out of the same conduct as the § 1983 claims. *See* Dkt. 2 at ¶¶ 166, 177, 188, 193, 199, 210, 216 (alleging the Defendants charged Mr. McGill with a crime and falsely stated that he committed a crime). Defendants argue that they are entitled to common-law absolute immunity on these claims as well. Dkt. 20 at 21-24 (arguing that prosecutors are absolutely immune from liability arising out of activities performed within the scope of their judicial duties). Mr. McGill responds that the common-law doctrine of prosecutorial immunity was abrogated by the Oklahoma Government Tort Claims Act, Okla. Stat. tit. 51 §§ 151 *et seq.*, and that, even if it was not, his claims for injunctive relief should be permitted to proceed. Dkt. 27 at 24-27.

The Court disagrees with Mr. McGill's claim that common-law prosecutorial immunity was abrogated by the GTCA. The GTCA was enacted in 1985 in response to a judicial opinion abrogating the doctrine of common-law *sovereign* immunity. *See Nguyen v. State*, 1990 OK 21, ¶ 3, 788 P.2d 962, 964. The Oklahoma Supreme Court has since recognized that, while the Act operates as "both an adoption and conditional waiver of the *sovereign* immunity doctrine," it does not impair other distinct grounds for immunity. *Sullins v. Am. Med. Response of Oklahoma, Inc.*, 2001 OK 20, 23 P.3d 259, 266 n.6, 267 n.11 (emphasis added) (recognizing that the "[c]ommon-law protection of judges from tort liability is a rubric entirely distinct from 'governmental tort immunity'" (citing *Pulliam v. Allen*, 466 U.S. 522 (1984))). In fact, the Oklahoma Supreme Court has recognized that the protections of the GTCA are supplemental to traditional immunity doctrines available at common law. *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 2010 OK 9, ¶

8

No. 23-cv-365

18, 230 P.3d 869, 877 (stating that the GTCA provides government employers
with "the same defenses to and limitations on liability" as private employers
under similar circumstances and that, "if the employee has immunity from
suit under a statute other than the GTCA *or under the common law*, . . . the
terms of § 155(16) should ordinarily extend those . . . benefits to the govern-
mental employer" (emphasis added)).

Although there are some opinions that appear to conflate the immun-
ity offered under the GTCA with the immunity available at common law,
those cases do not hold that the GTCA abrogates the doctrine of prosecuto-
rial immunity.[6] Mr. McGill has not pointed to any case law holding that the
GTCA abrogates prosecutorial immunity, and this Court's research suggests
that traditional common-law immunities can coexist with the GTCA, occa-
sionally overlap with the GTCA, and have been applied since the GTCA was
enacted forty years ago. *See Morales*, 2010 OK 9, ¶ 18, 230 P.3d at 877; *Sullins*,
2001 OK 20, 23 P.3d 259, 266 n.6, 267 n.11; *Allen v. Zigler*, 2002 OK CIV
APP 30, ¶ 4, 41 P.3d 1060, 1061 (recognizing that "[it] has long been the law
that judges enjoy absolute immunity from damages for acts performed in their
judicial capacities"). And if there were any doubt as to whether common-law
immunities survived the enactment of the GTCA at the time this action was
filed, the Tenth Circuit has recently put the question to rest. *See Modoc Nation
v. Follis*, No. 24-5135, slip op. at 9-10 (10th Cir. Oct. 3, 2025) (recognizing that
personal immunity defenses such as prosecutorial immunity are distinct from
sovereign immunity and stating that, "[i]n Oklahoma, a judicial officer is not
liable in civil action for judicial acts" (citation and quotation marks omitted)).

---

[6] *See N. Side State Bank v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 1994 OK 34, ¶ 12,
894 P.2d 1046, 1050 (evaluating whether judicial immunity attached to a court clerk under
the GTCA); *White v. State ex rel. Harris*, 2005 OK CIV APP 79, ¶ 11, 122 P.3d 484, 488
(concluding that the district attorney was "immune from liability pursuant to the GTCA"
which provides that the State "shall not be liable for losses resulting from judicial, quasi-
judicial, or prosecutorial functions").

No. 23-cv-365

Mr. McGill argues that he may nevertheless pursue his state-law claims for injunctive relief against Mr. Ballard, Mr. Gibbs, and Ms. Leavell even if the doctrine of prosecutorial immunity applies. Mr. McGill provides no case law to support his contention that he may seek and obtain a personal injunction against a state prosecutor under Oklahoma law. *See* Dkt. 27 at 25-26. Furthermore, the allegations of the complaint do not state a claim for injunctive relief against Mr. Ballard, Mr. Gibbs, or Ms. Leavell in their individual capacities because the complaint does not allege that any of those Defendants engaged in any wrongful conduct outside of their official duties as prosecutors. *See* Dkt. 2 at ¶¶ 44, 47, 55, 70, 95. An order enjoining the prosecutors from individually violating Mr. McGill's rights would be purely speculative and inappropriate given the absence of any allegation that they previously engaged or threatened to engage in any individual wrongdoing. *See Oklahoma Pub. Employees Ass'n v. Oklahoma Dep't of Cent. Servs.*, 2002 OK 71, ¶ 20, 55 P.3d 1072, 1081 (Okla. 2002) (recognizing that "an injunction should be denied when the expectation of future wrongdoing is too speculative to form the basis for issuing an injunction").[7]

The common-law doctrine of prosecutorial immunity applies here, and it bars any claim for damages arising out of intrinsically prosecutorial conduct. *See Powell v. Seay*, 1976 OK 22, ¶ 21, 553 P.2d 161, 164. And as discussed in Section II(A), *supra*, all of Mr. McGill's allegations regarding Mr. Ballard, Mr. Gibbs, and Ms. Leavell concern conduct intrinsic to the prosecution of Mr. McGill. To the extent Mr. McGill has a legal basis for asserting state-law claims for injunctive relief against those Defendants in their individual capacities, his complaint fails to set forth facts establishing a right to that relief.

---

[7] *See also J. Corman Fam. Ltd. P'ship #4 v. Devon Energy Prod. Co., L.P.*, No. CIV-16-1213-R, 2017 WL 4053858, at *1 (W.D. Okla. Sept. 13, 2017) (dismissing claim for injunctive relief where the allegation that a defendant would continue in breach of its obligations was "purely speculative").

No. 23-cv-365

Accordingly, Mr. McGill's state-law claims against the prosecutors in their individual capacities are dismissed.

C

Mr. McGill's claims against the District Attorney's Office and his official-capacity claims against the prosecutors are next. These Defendants argue that, as an agency and employees of the state, they are immune from suit. *See* Dkt. 20 at 18-21. Mr. McGill agrees that the Eleventh Amendment bars his claims for damages against those Defendants. Dkt. 27 at 22-24. *See Butler v. Rainbolt*, No. 23-7091, 2024 WL 3548936, at *2 (10th Cir. July 26, 2024). Based on the parties' agreement, the Court dismisses Mr. McGill's damages claims against the District Attorney's Office and his official-capacity claims against its agents.

Mr. McGill argues that, although he cannot maintain a claim for damages, he may obtain injunctive relief against both the District Attorney's Office and its agents in their official capacities. Dkt. 27 at 22-24. The Defendants did not address this issue in their opening brief, which is directed primarily at Mr. McGill's damages claims. *See* Dkt. 20 at 19 (stating that the "Eleventh amendment bars suits for damages against a state in federal court"); *id.* at 20 (same). The Court cannot find a request to dismiss Mr. McGill's claims for injunctive relief anywhere in Defendants' motion. Although Defendants argue in their reply that Mr. McGill lacks standing to seek injunctive relief under *Ex Parte Young*, that argument was not raised in their original motion, and Mr. McGill has not had an opportunity to respond to it.

The Court is mindful of its independent obligation to determine a party's standing to seek relief, regardless of when and how that issue is raised. Nevertheless, the Court is reticent to address that issue when only one party has briefed it. The Court denies Defendant's motion to dismiss Mr. McGill's claims for injunctive relief against the District Attorney's Office and its

No. 23-cv-365

agents in their official capacities and will direct the parties to submit supplemental briefing on this issue as noted in part III, *infra*.

## D

Finally, the Court turns to the Sheriff's motion to dismiss. The Sheriff, who is sued in his official capacity only,[8] argues that (1) Mr. McGill's claims for relief under 42 U.S.C. § 1983 must be dismissed because the complaint fails to set forth an underlying constitutional violation that was caused by a municipal policy or custom, and (2) Mr. McGill's complaint is too vague and conclusory to state a claim for conspiracy under 42 U.S.C. § 1985. The Court agrees on both points.

### 1

To state a claim for relief under 42 U.S.C. § 1983, Mr. McGill must allege facts sufficient to establish (a) an underlying constitutional violation, (b) a municipal policy or custom, and (c) a link between the policy or custom and the constitutional injury he allegedly suffered. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Mr. McGill's complaint does not establish the first essential element.

Mr. McGill's chief constitutional complaint is that the Sheriff's Department and its agents arrested him without probable cause. Dkt. 2 at ¶¶ 93, 94, 100, 101, 214. But Mr. McGill acknowledges that he was arrested pursuant to a warrant, and he has not alleged or even suggested that the warrant was facially invalid or otherwise legally insufficient to permit the Department to arrest him. Without such an allegation, Mr. McGill cannot state a claim for a constitutional violation; the complaint itself establishes that a facially valid arrest warrant provided the Sheriff's Department and its agents with a constitutional basis for the arrest. *See, e.g., Jones v. Hacker*, No. 13-cv-00444-JHP,

---

[8] Mr. McGill's claim against Sheriff Walton is, in substance, a claim against Rogers County. *See Myers v. Okla. County Bd. of County Com'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998).

No. 23-cv-365

2015 WL 1279363, at *4 (E.D. Okla. Mar. 20, 2015) (recognizing that officers may "rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable" (quoting *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989))); *Chavez v. Cnty. of Bernalillo*, 3 F. Supp. 3d 936, 994 (D.N.M. 2014) (holding that the county employees did not violate the Fourth Amendment by detaining the plaintiff pursuant to a cancelled, facially valid warrant).

Mr. McGill argues that the Sheriff's Department had "actual knowledge" that the warrant was invalid because it had access to the easement through public records and because an officer had been given a copy of the easement prior to Mr. McGill's arrest. Dkt. 3 at ¶ 94. But even if this information would have put the Department on notice of potential problems with the warrant, that does not mean the Department violated Mr. McGill's rights by executing the warrant. An "officer is not required by the Fourth Amendment to obtain a copy of [a] warrant, research supporting documentation, or go behind the facial validity of a warrant before making [an] arrest." *Smyth v. City of Lakewood*, No. 95-1481, 1996 WL 194715, at *4 (10th Cir. Apr. 19, 1996).[9] To the extent the Department was in possession of information allegedly at odds with the arrest warrant,[10] it had no constitutional obligation to challenge or refuse to execute the warrant based on that knowledge.

––––––––––––––––

[9] *See also Scull v. New Mexico*, 236 F.3d 588, 598 (10th Cir. 2000) (concluding that the appellees "were not required by . . . the Constitution . . . to investigate independently Mr. Reed's claim that he should be released"); *Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984) (holding that, "[u]nless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity").

[10] The Court does not agree with Mr. McGill's suggestion that the information he provided was sufficient to call the legality of the warrant into question. The easement is not in Sam McGill, Jr.'s name. Furthermore, Mr. McGill was charged with malicious injury to property, a charge that encompasses acts including injury to and destruction of property. It is not clear that a person who has the legal right to *move* property cannot be charged with maliciously *injuring* that property during the moving process.

13

No. 23-cv-365

Mr. McGill contends the Department should be judicially estopped from arguing that it had probable cause to arrest him because the charges against him were ultimately dismissed. *See* Dkt. 26 at 11-12. This argument lacks merit. The question of whether probable cause exists *at the time of an arrest* is distinct from the question of whether probable cause *continues* to exist at the outset of a criminal trial. *E.g., Pena Lee v. City of Las Cruces*, ____ F. Supp. 3d ____, No. 2:22-cv-00960-WJ-GBW, 2025 WL 2267963, at *15 (D.N.M. Aug. 8, 2025) (recognizing whether probable cause exists to support a criminal complaint is a question "distinct from" whether a plaintiff was falsely arrested, which focuses "solely on whether probable cause existed at the time of [the] initial arrest").[11] The judicial officer's determination that the State could not *prosecute* Mr. McGill for destruction of property in December 2022 does not preclude the Department from arguing (or establishing) that it had probable cause to *arrest* Mr. McGill on that charge over a year earlier. *Dutton v. City of Midwest City*, 630 F. App'x 742, 745 (10th Cir. 2015) (stating that the "fact that the charges against [the plaintiff] were later dismissed [was] not determinative" of his false-arrest claim).

The Department is not precluded from arguing that its conduct was constitutional, and there are no allegations in Mr. McGill's complaint that, if true, would establish that the Department violated Mr. McGill's constitutional rights by executing a presumptively valid warrant. Absent such allegations, Mr. McGill cannot satisfy the first required element of his § 1983 claims against the Department and its agents, and those claims must be dismissed. *See Graves*, 450 F.3d at 1218.

---

[11] *See also Sodaro v. City & Cnty. of Denver*, 753 F. Supp. 3d 1224, 1237 (D. Colo. 2024) (expressing doubt as to whether "a finding of arguable probable cause . . . on [an] unlawful seizure claim should automatically defeat [a] malicious prosecution claim" where the two claims involve two probable-cause determinations, one at the time of the arrest and the other at a hearing).

No. 23-cv-365

2

Mr. McGill's complaint fails to state a claim that the Department and its agents violated 42 U.S.C. § 1985(3).[12] A claim for relief under § 1985(3) cannot be premised upon "vague and conclusory allegations" but "must be [pleaded] with some degree of specificity." *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) (citation and internal quotation marks omitted). Mr. McGill's complaint fails to allege specific facts showing that the Department or any of its agents agreed or conspired with any other person for the purpose of depriving Mr. McGill of his constitutional rights—allegations that are necessary to state a claim for relief under § 1985(3). *See* 42 U.S.C. § 1985(3); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (setting forth the essential elements of a § 1985 claim). At most, the complaint alleges that the Department and its representatives arrested Mr. McGill (pursuant to a warrant) without probable cause and were part of a "conspiracy between all of the Defendants to deprive McGill of the equal protection of the laws." Dkt. 2 at ¶¶ 150-153. These allegations are vague, conclusory, unsupported by well-pleaded facts, and insufficient to state a claim for relief under § 1985(3). *Cf. AerSale, Inc. v. City of Roswell*, No. 2:22-cv-00218-MIS-DLM, 2024 WL 2939166, at *16 (D.N.M. June 11, 2024) (dismissing claim that a defendant acted "in concert and by agreement with and at the direction of" another defendant (internal quotation marks omitted)). The Department's motion to dismiss the § 1985 claim is granted.

III

For the reasons set forth above, the District Attorneys' motion to dismiss [Dkt. 20] is granted in part and denied in part, and the Sheriff's Department's motion to dismiss [Dkt. 21] is granted. Mr. McGill's claims against the Sheriff's Department, his claims against Mr. Ballard, Mr. Gibbs, and Ms.

---

[12] The complaint does not indicate which subparagraph of § 1985 is at issue. The Court assumes Mr. McGill is bringing claims under paragraph (3) of that statute.

No. 23-cv-365

Leavell in their individual capacities, and his federal claims and his state-law damages claims against the District Attorney's Office and its agents acting in their official capacities are dismissed without prejudice. Mr. McGill's state-law claims for equitable relief against the District Attorney's Office and Mr. Ballard, Mr. Gibbs, and Ms. Leavell in their official capacities remain pending.

The parties are directed to appear for a case management and scheduling conference on October 28, 2025, at 10:00 a.m. to set a deadline to file an amended pleading and a briefing schedule to address the viability of the sole claim that was not resolved by this order.

DATED this 7th day of October 2025.

JOHN D. RUSSELL
*United States District Judge*